IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| JESSICA LANGFORD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:18-cv-2037 |
| | ) | |
| CITY OF ST. LOUIS, MISSOURI, | ) | |
| | ) | |
| Defendant. | ) | |

## COMPLAINT

1. While marching and chanting peacefully with a group of protestors during the Women's March in St. Louis on January 21, 2017, Jessica Langford was arrested, transported, booked, and detained for some nine hours for violating St. Louis Code § 17.16.275 (the Ordinance), which criminalizes the impedance of traffic and the failure to obey an order of a police officer without providing an allowance for expressive activity on a street or sidewalk under any circumstances.

2. In this civil-rights action, Langford seeks judgment against the City of St. Louis that the Ordinance is unconstitutional as applied to her as a person engaged in expressive conduct because, in giving individual officers unfettered discretion to engage in arbitrary and discriminatory enforcement, the Ordinance is overbroad and vague under the First Amendment and the Due Process Clause of the Fourteenth Amendment.

## PARTIES

3. Langford is a citizen of Missouri who resides in St. Louis County.

4. The City of St. Louis, Missouri, is a municipal corporation and political subdivision of the State of Missouri.

## JURISDICTION AND VENUE

5. Langford brings this claim pursuant to the Free Speech Clause of the First Amendment to the United States Constitution and the Due Process Clause of the Fourteenth Amendment, through 42 U.S.C. § 1983.

6. This Court has jurisdiction under 28 U.S.C. § 1331 as this claim "arises under the Constitution of the United States."

7. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) & (2) because Defendant is located in the city of St. Louis, Missouri, and its actions giving rise to the claim in this suit occurred in the city of St. Louis.

8. Venue is proper in the Eastern Division of this Court pursuant to E.D.Mo. L.R. 2.07(A)(1), (B)(2).

## FACTS

### *The Challenged Ordinance*

9. The Ordinance has six sections. The first five are substantive limits on conduct, and the last one is a penalty provision.

10. Section A of the Ordinance states: "No person, or persons congregating with another or others, shall stand or otherwise position himself or herself in any public place in such a manner as to obstruct, impede, interfere, hinder or delay the reasonable movement of vehicular or pedestrian traffic." § 17.16.275(A).

11. Section B of the Ordinance states: "No person, or persons congregating with another or others, shall stand or otherwise position himself or herself in any entrance, exit, corridor or passage of any public building in such a manner as to obstruct, impede, interfere, hinder or delay the reasonable movement of vehicular or pedestrian traffic." § 17.16.275(B).

12.Section C of the Ordinance states: "No person, or persons congregating with another or others, shall stand or otherwise position himself or herself at the entrance or exit to a private building, including driveway, entrance to a garage and entrance to a parking pad, in such a manner as to obstruct, impede, interfere, hinder or delay the reasonable movement of vehicular or pedestrian traffic." § 17.16.275(C).

13.Section E of the Ordinance states: "No person who has committed an act or acts within the description of subsections (A) through (D) above, upon being given an order by a police officer, state trooper, marshal, ranger, firefighter, Missouri authorized security guard, or other authorized law enforcement or emergency response personnel to disperse, clear, or otherwise move, shall fail or refuse to obey such order. Such failure or refusal shall constitute the separate offense of failure to obey a dispersing order by a police officer, state trooper, marshal, ranger, firefighter, Missouri authorized security guard, or other authorized law enforcement or emergency response personnel." § 17.16.275(E).

14.Section F of the Ordinance states: "[A]ny person violating any of the provisions of this section shall, for each such violation, be guilty of a Class A misdemeanor and upon conviction shall be subject to anyone of no less than one hundred dollars ($100) and not more than five hundred dollars ($500) or by imprisonment for not more than ninety days, or by both fine and imprisonment." § 17.16.275(F).

15.Sections A–C and E of the Ordinance do not include a *mens rea* requirement.

16.Specifically, to violate Sections A–C and E of the Ordinance, a person does not need to have a specific intent to "obstruct, impede, interfere, hinder or delay the reasonable movement of vehicular or pedestrian traffic." 17.16.275(A)-(C).

3

17. In contrast, Section D of the Ordinance includes a *mens rea* requirement. Namely, this provision is triggered if a person congregates only "for the <u>purpose</u> of selling or offering for sale goods or services without a license" in any public place. 17.16.275(D) (emphasis added).

### ***The Incident***

18. Shortly after the January 2017 inauguration of President Trump, an estimated three to four million people participated in Women's Marches across the United States, and up to an estimated five million people participated worldwide.

19. In St. Louis, on January 21, 2017, approximately 13,000 people participated in the peaceful march which began at Union Station and proceeded to a rally at Luther Ely Smith Square before returning to the area around Union Station.

20. The Women's March participants did not have a permit to march or protest because the City of St. Louis will not issue a permit for protests. St. Louis Code § 17.16.030 prohibits "procession[s] containing twenty-five (25) or more persons" from marching "without permit" and "only in accordance with such permit, issued by the Department of Streets." Yet the City does not issue permits for any protests and specifically declined to issue a permit for the Women's March.

21. Langford participated in the St. Louis Women's March on January 21, 2017.

22. Several streets were closed off by police in order to accommodate this event.

23. The group was nonviolent and was marching peacefully.

24. Around noon, Langford was marching west on Market Street with a large group of marchers.

25. Market Street had been closed to vehicular traffic.

26. At Market Street and 16th Street, east of Union Station, the group of marchers was ordered by an officer to move from the street to the sidewalk.

27. Many of the marchers moved to the sidewalk, but Langford declined to do so.

28. However, Langford was less than two feet from the sidewalk, between the curb and the parking lane, and would not have been blocking vehicular traffic even if vehicles were traveling on all of the streets.

29. Langford was then arrested by Lt. Scott Boyher of the St. Louis Metropolitan Police Department for impeding traffic and failing to obey the reasonable order of a police officer.

30. Langford was transported, booked, and then detained at the City Justice Center for some nine hours.

31. Langford was also prosecuted for the arresting charges, but the charges were dismissed by the court when neither Lt. Boyher, nor assisting officer Adam Duke, nor any other SLMPD officer appeared at her trial.

32. Because of her arrest, booking, and subsequent prosecution, Langford has refrained from participating in other protests and marches in the City of St. Louis, in which she would have otherwise taken part.

33. The chilling effect of the Ordinance on Langford's expressive activity is based on her reasonable belief that she will be subject to arrest and/or prosecution under the Ordinance.

### COUNT I: FIRST AMENDMENT
*The Ordinance is Overbroad in Violation of the First Amendment*

34. Plaintiff repeats, re-alleges, and incorporates by reference the allegations in the foregoing paragraphs of this Complaint as if fully set forth herein.

35. Langford engaged in constitutionally protected expressive activity when she gathered with other marchers on public streets and sidewalks, and when they marched as a group, to express their disapproval of the election and inauguration of President Trump and to express their support for the rights of women.

36. Langford has been chilled from engaging in constitutionally protected speech because she reasonably fears citation, arrest, and/or prosecution.

37. Fear of citation, arrest, and/or prosecution under the Ordinance would chill a person of ordinary firmness from continuing to engage in a constitutionally protected activity.

38. The Ordinance does not provide notice to protesters as to when an officer may lawfully order a protestor to cease her expressive activity on a street or sidewalk, traditional public forums, in the city of St. Louis.

39. The Ordinance, by its plain language, reaches a substantial amount of constitutionally protected conduct.

40. The Ordinance violates the Free Speech Clause of the First Amendment to the Constitution, as applied to persons engaged in expressive conduct, because it is substantially overbroad relative to the City's legitimate interest in ensuring the free and orderly flow of traffic on streets and sidewalks.

41. The Ordinance is neither narrowly tailored nor the least restrictive means to achieve any sufficiently strong government interest, and it does not leave open ample alternative avenues of communication for Langford to convey her message.

42. Because the City of St. Louis does not issue permits or maintain another process through which to legally protest on a street or sidewalk, the plain language of the Ordinance

6

completely forecloses a venerable means of communication—sidewalk and street protests—that is both unique and important.

43. The Ordinance is also overbroad because it applies to any protest or other expressive activity that occurs in a street, on a sidewalk, on a roadway, in an alley, on a highway, on a bridge, on an overpass, in a passageway, at a bus stop, on a street median, or any property that is immediately adjacent to any of those, at the entrance or exit of a public building such as any structure with a business license from the City of St. Louis, any building that conducts governmental business on behalf of the United States, State of Missouri, or the City of St. Louis, restaurants, banks, shops, gyms, financial institutions, libraries, museums, hotels, other entities that invite the public, schools, places of employment, medical facilities, places of worship, or residential buildings. § 17.16.275 (A)–(C).

44. Furthermore, the Ordinance is unconstitutionally overbroad because it criminalizes ordinary conduct, including a single person standing in a public place, or in front of a public or private building, without any *mens rea* requirement.

45. Specifically, a single person standing in a public place, or in front of a public or private building, could violate the Ordinance even though the person does not have *any* intent to "obstruct, impede, interfere, hinder or delay the reasonable movement of vehicular or pedestrian traffic." 17.16.275(A)-(C).

46. Because the Ordinance does not include a *mens rea* requirement, a violation of the Ordinance turns on the subjective opinions of police officers who observe the conduct at issue.

47. The Ordinance's restriction on First Amendment-protected expressive activity is much greater than necessary to further any legitimate interest it serves.

### COUNT II: FOURTEENTH AMENDMENT
*The Ordinance is Void-for-Vagueness in Violation of Due Process Clause*

7

48. Plaintiff repeats, re-alleges, and incorporates by reference the allegations in the foregoing paragraphs of this Complaint as fully set forth herein.

49. The Due Process Clause provides the constitutional foundation for the void-for-vagueness doctrine.

50. The void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can under what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement.

51. An important aspect of the void-for-vagueness doctrine is the requirement that the legislature establish minimal guidelines to govern law enforcement. Otherwise, a criminal statute may permit a standardless sweep that allows poice officers to pursue their personal predilections.

52. The Ordinance does not include any guidelines to govern law enforcement.

53. In particular, Sections A–C and E of the Ordinance confer virtually unrestrained authority upon the police.

54. Furthermore, Sections A–C and E of the Ordinance do not include a *mens rea* requirement.

55. Indeed, a *single* person—regardless of the person's intent—violates the Ordinance whenever the person "stands or otherwise position himself or herself" in a "public place," or close to a "public building" or "private building," in such a manner as to "obstruct, impede, interfere, hinder, or delay the reasonable movement of vehicular or pedestrian traffic." § 17.16.275 (A)-(C).

56. Conduct which may cause one police officer to issue an order for violation of Sections A–C and E of the Ordinance may be disregarded as innocuous by another police officer.

57. Sections A–C and E of the Ordinance lend themselves to arbitrary, discriminatory and harsh enforcement.

58. The Ordinance applies to groups of people of any size or even a single person, and it applies even where traffic is not actually using a street or sidewalk—even where the street or sidewalk has been closed by police.

59. The Ordinance is violated daily, but it is only enforced against certain individuals who are chosen through the unguided discretion of individual police officers.

60. For example, a parade commemorating Veterans Day, a group of people standing on a sidewalk waiting for a ride, an LGBTQ pride march, and a neighborhood "Block Party" all fall within the scope of the Ordinance, but the City of St. Louis has not enforced the Ordinance against people taking such actions.

61. The Ordinance is not only susceptible to regular application to protected expression but has in fact been used regularly to cite persons engaged in constitutionally protected expression.

## **PRAYER FOR RELIEF**

WHEREFORE, Langford prays this Court:

A. Grant a preliminary injunction upon motion and a permanent injunction preventing enforcement of the Ordinance;

B. Enter a declaration that the Ordinance is unconstitutional on its face and as applied to Langford;

C. Award Langford nominal and compensatory damages;

D. Award Langford costs and reasonable attorney fees pursuant to 42 U.S.C. § 1988 and any other applicable provisions of law; and

E. Allow such other and further relief as this Court finds just and proper under the circumstances.

Respectfully submitted,

/s/ Anthony E. Rothert
Anthony E. Rothert, #44827MO
Jessie Steffan, #64861MO
Omri E. Praiss, #41850MO
ACLU of Missouri Foundation
906 Olive Street, Ste. 1130
St. Louis, Missouri 63101
Phone: (314) 652-3114
arothert@aclu-mo.org
jsteffan@aclu-mo.org
opraiss@aclu-mo.org

Gillian R. Wilcox, #61278MO
ACLU of Missouri Foundation
406 West 34th Street, Ste. 420
Kansas City, Missouri 64111
Phone: 816/470-9938
Fax: 314/652-3112
gwilcox@aclu-mo.org

**Attorneys for Plaintiff**