UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| **JESSICA LANGFORD,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | )   Case No. 4:18-cv-2037 |
| | ) |
| **CITY OF ST. LOUIS, MISSOURI,** | ) |
| | ) |
| **Defendant.** | ) |

**REPLY TO PLAINTIFF'S MEMORANDUM IN OPPOSITION TO
MOTION FOR SUMMARY JUDGMENT**

The parties have briefed the issues in this case thoroughly in support of and opposition to the cross-motions for summary judgment, and the City does not wish to trespass on the Court's patience; but a few points raised by plaintiff's memorandum and response to the statement of uncontroverted material fact [ECF 35] necessitate a brief response.

1.   *Issues of fact.*   Plaintiff asserts a pettifogging objection to the defendant's SUMF under Local Rule 4.01(E), and defendant concedes that its SUMF is not in literal compliance with the rule; but plaintiff had no difficulty in identifying facts to controvert, and this Court need not "scour the record" to find

the facts on which either party is relying.  Defendant submits that it has complied substantially with the Local Rule.[1]

Defendant also confesses the typographical error in ¶¶1-2 of its SUMF in which the date of plaintiff's arrest was stated as January 17.  There is no dispute that Lt. Boyher arrested plaintiff on January 21.

Significantly, plaintiff does not controvert the fact that, at the time of plaintiff's arrest, police were attempting to re-open Market Street to vehicular traffic, and were simply asking marchers to move to the sidewalk.  Response to SUMF  [ECF 35] at ¶11.  There is no dispute that plaintiff was not in imminent danger of being hit by a car, but likewise there is no dispute that plaintiff was impeding the re-opening of the street, which effectively prevented the "reasonable movement of vehicular or pedestrian traffic."

Plaintiff's response to defendant's SUMF alludes to plaintiff's allegations of discourteous treatment by police officers after her arrest.  Pl.Resp. [ECF 35] at ¶17.  Defendant objects to the inclusion of these additional facts as irrelevant.

Defendant's SUMF Exhibit 6 was incomplete.  Defendant provided plaintiff in discovery with a full summary of arrests under the ordinance at issue since 2012, when it was revised.  Defendant is seeking leave to present that summary as SUMF

---

[1]Defendant observes that plaintiff objects to portions of the SUMF on the basis of F.R.Civ.P. 26(c).  Defendant has no doubt that plaintiff means Rule 56(c).

Supplemental Exhibit 6A, which shows the regularity of arrests in all contexts for violating the ordinance.

Finally, plaintiff seriously misstates the record in regard to permits. While accusing the City of not being able to make up its mind about the permit issue, the plaintiff finds it necessary to insist continually that nobody could get a permit for a protest. On the contrary, there is no dispute that plaintiff or anybody else *could* get a permit for a protest or any other street activity, if they wished. The City simply does not *require* a permit for protest activity. The City addresses permits because plaintiff insists that City traffic ordinances must make exceptions for "expressive activity," and the record shows that the City will both grant permits for such activity and will not enforce §17.16.275.A against protest activity in the absence of criminal behavior or unreasonable refusal to make way for traffic.

2. *Scienter or mens rea.* Defendant admires the dexterity of plaintiff's counsel in attempting to turn the lemon that was handed them in *Church v. State of Missouri,* 913 F.3d 736 (8th Cir. 2019), into lemonade in this case. However, plaintiff's adroit argument as to why this Court can freely ignore *City of St. Louis v. Jones,* 536 S.W.3d 794 (Mo.App.E.D. 2018), overlooks a salient point: the City of St. Louis is bound by the *Jones* decision. On the issue of construing City ordinances, the Court of Appeals had general appellate jurisdiction, and no appeal would lie directly to the Missouri Supreme Court—even if the defendant

3

had asserted a constitutional objection to the ordinance. Mo.Const. art. V, §3; *Alumax Foils, Inc. v. City of St. Louis,* 939 S.W.2d 907 (Mo.banc 1997); *Bennett v. St. Louis County,* 542 S.W.3d 392 (Mo.App.E.D. 2017). Thus, predicting how the Missouri Supreme Court would decide the issue of mental state in enforcing any St. Louis City ordinance is unnecessary: this Court must follow the pronouncement of the highest state court that has addressed this issue in the absence of any conflicting authority. *Six Cos. of California v. Joint Highway Dist.,* 311 U.S. 180 (1940).

*Church* involved numerous decisions of the Missouri Supreme Court that contradicted the intermediate appellate decisions relied on by the *Church* plaintiffs. Neither *Kansas City v. LaRose,* 524 S.W.2d 112 (Mo.banc 1975), nor *City of St. Louis v. Williams*, 343 S.W.2d 16 (Mo. 1961), relied on by plaintiff, is in direct conflict with *Jones.* Indeed, two judges in *LaRose* concurred on the basis that the Kansas City ordinance in question *did* require a mental state. 524 S.W.2d at 121-22. In the posture of this case, this Court is not at liberty to construe the City's ordinance independently of the Missouri Court of Appeals.[2]

---

[2] Even if the ordinance did not include a *mens rea*, that would not be fatal to its validity. As *Stahl* and other cases teach, a *mens rea* requirement may serve to narrow an otherwise vague regulation, but if an ordinance gives fair notice of prohibited conduct, the absence of a *mens rea* requirement does not render it unconstitutional. Cf. *Morissette v. United States,* 342 U.S. 246 (1952).

3.	*"Short shrift" to the First Amendment.*	The Women's March in St. Louis in 2017 took control of Market Street without let or hindrance for several hours.  Thousands of persons marched, rallied, and then marched some more.  No marcher was arrested for expressive activity or anything else.  Only after the march was over, when officers were trying to re-open the street, did police ask marchers to move to the sidewalk, on which they could (and did) continue their marching or any other "expressive activity" that they wanted to.  It is hard to understand how plaintiff thinks the City gives "short shrift" to the First Amendment.  Far from giving "short shrift," the City's uniform policy is to accommodate protest activity, even when it occurs in the streets.  On the contrary, it is plaintiff who gives short shrift to the competing interests of the general public in using public streets.

> Civil liberties, as guaranteed by the Constitution, imply the existence of an organized society maintaining public order without which liberty itself would be lost in the excesses of unrestrained abuses. The authority of a municipality to impose regulations in order to assure the safety and convenience of the people in the use of public highways has never been regarded as inconsistent with civil liberties but rather as one of the means of safeguarding the good order upon which they ultimately depend. The control of travel on the streets of cities is the most familiar illustration of this recognition of social need. Where a restriction of the use of highways in that relation is designed to promote the public convenience in the interest of all, it cannot be disregarded by the attempted exercise of some civil right which in other circumstances would be entitled to protection. One would not be justified in ignoring the familiar red traffic light because he thought it his religious duty to disobey the municipal command or sought by that means to direct public attention to an announcement of his opinions. As regulation of the use of the streets for parades and processions is a traditional exercise of control by local government, the question in a particular case is whether that control is exerted so as not to deny or unwarrantedly abridge the right of

assembly and the opportunities for the communication of thought and the discussion of public questions immemorially associated with resort to public places. [*Cox v. New Hampshire,* 312 U.S. 569, 574 (1941).]

4. *Vagueness.* The ordinance at issue is in terms readily understood by any person of common intelligence (and common sense). Plaintiff calls on the Court to ignore *Agnew v. Govt. of Dist. of Columbia,* 920 F.3d 49 (D.C.Cir. 2019), because it was not decided in a First Amendment context. However, the D.C. Circuit was confronted with a vagueness challenge and analyzed that challenge in light of First Amendment cases, such as *City of Chicago v. Morales,* 527 U.S. 41 (1999). Further, the St. Louis ordinance passes muster under relevant Supreme Court precedent. *Boos v. Barry, Cameron v. Johnson,* 390 U.S. 611 (1968).

Plaintiff also takes liberties with the opinion in *Stahl v. City of St. Louis,* 687 F.3d 1078 (8th Cir. 2012). That case held that a prior City ordinance was void for vagueness, but the Court described the problem as follows: "The ordinance criminalizes speech if it has the consequence of obstructing traffic, but the speaker does not know if his or her speech is criminal until after such an obstruction occurs." 687 F.3d at 1041. By contrast, §17.16.257.A clearly provides that a person is liable if, alone or with others, he knowingly positions himself in a street in such a manner as to obstruct the reasonable movement of traffic. The actor knows that he is in violation when he positions himself in the street and thereby

6

causing an obstruction. The actor's speech and the reaction of others to that speech is wholly outside the scope of the ordinance.

     5.    *Overbreadth.* It would appear that plaintiff's chief complaint about the St. Louis ordinance is overbreadth: by making no exception for "expressive activity," it impermissibly sweeps too much protected conduct into its net. However, the ordinance does not reach a "substantial amount" of constitutionally protected conduct. See *Virginia v. Hicks,* 539 U.S. 113 (2003). It prohibits intentionally impeding the reasonable movement of traffic and pedestrians on public streets. Thus, it has nothing to do with the content of speech and reaches only that conduct which in fact impedes the flow of traffic. The ordinance, therefore, is "narrowly tailored to serve a significant governmental interest." *McCullen v. Coakley,* 134 S.Ct. 2518, at 2534 (2014), citing *Ward v. Rock Against Racism,* 491 U.S. 781 (1989). The purpose and effect of the ordinance is not to prevent expressive conduct, but to keep public places open and accessible to all. It does this by forbidding *only* the knowing impeding of the flow of vehicular or pedestrian traffic. It does not prevent anyone from carrying a sign on a sidewalk, driving a car decorated with banners along the street, or addressing passersby. To the extent it limits group assemblies, it does so only if, in fact, the actors are obstructing traffic. This very case demonstrates that the marchers were

7

wholly free to use the sidewalks or the adjacent Gateway Mall park areas to communicate their message.

6.  *Unconstitutional "as applied."*  The march was over.  It is uncontroverted that the police were trying to re-open Market Street to traffic: it is simply ludicrous to claim that plaintiff was not impeding the flow of traffic; no traffic whatever could proceed westbound on Market Street until the street was cleared.  Plaintiff was asked to move, she knew she had been asked to move, but she deliberately decided to ignore the directive and stay in the street.  Yet she could easily have moved a couple of feet to the sidewalk (as did her companion) and harangued the police officer from there.

Plaintiff's "as applied" challenge is really an argument that she was not guilty of violating the ordinance.  That may be true, but it says nothing about the constitutionality of applying the ordinance to her.

Given that the ordinance was validly applied to plaintiff, her standing to attack it as vague or overbroad is doubtful.  In any event, plaintiff has no standing to question subsections B through D of the ordinance, which have not been applied or threatened to be applied to her.  Likewise, she cannot attack subsection E, which authorizes an officer to direct a person to vacate a street only if the person is committing acts described in the preceding sections.  Indeed, the Court could properly hold subsection E as valid in light of *Boos v. Barry* and *Agnew v. Govt. of*

*District of Columbia,* supra, given the established principles counseling caution in entertaining facial challenges, and of avoiding decision of unnecessary constitutional questions, and given that violation of subsection E is declared a separate offense and so could be severable.  See, e.g., *Washington State Grange v. Washington State Republican Party,* 552 U.S. 442, 449-50 (2008); *Brockett v. Spokane Arcades, Inc.,* 472 U.S. 491 (1985).  Thus, a conclusion that subsection A, considered as establishing a separate offense, is invalid "as applied" does not require striking the entire ordinance.

## Conclusion

There is no genuine issue of material fact.  Plaintiff was arrested on probable cause for violating a valid ordinance regulating traffic, not speech.  Defendant is entitled to judgment as a matter of law.

                Respectfully submitted,
                JULIAN L. BUSH
                CITY COUNSELOR

                /s/ Robert H. Dierker
                Robert H. Dierker 23671MO
                Associate City Counselor
                dierkerr@stlouis-mo.gov
                1200 Market St.
                City Hall, Rm 314
                St. Louis, MO 63103
                314-622-3361
                Fax 314-622-4956