United States Court of Appeals
For the Eighth Circuit
_____

No. 20-1488
_____

Jessica Langford,

*Plaintiff - Appellee*,

v.

City of St. Louis, Missouri,

*Defendant - Appellant.*
_____

Appeal from United States District Court
for the Eastern District of Missouri - St. Louis
_____

Submitted: January 14, 2021
Filed: July 6, 2021
_____

Before COLLOTON, WOLLMAN, and SHEPHERD, Circuit Judges.
_____

COLLOTON, Circuit Judge.

This case involves a constitutional challenge to a traffic ordinance in St. Louis. Jessica Langford attended an event called the Women's March in January 2017. After Langford marched to a rallying point and observed the event, she joined a number of people returning the same way they had come by walking in the street. Police officers told the marchers to move to the sidewalk, but Langford refused.  An

officer arrested her for violating § 17.16.275 of the Revised Code of St. Louis, which prohibits obstructing traffic.

After the charge against Langford was dismissed, she sued the City under 42 U.S.C. § 1983, challenging the constitutionality of the ordinance under the First and Fourteenth Amendments. The district court granted Langford's motion for partial summary judgment, concluding that the ordinance is an unconstitutional restriction on speech, is void for vagueness, and was unconstitutionally applied to Langford. We respectfully disagree and reverse.

I.

The Women's March began near Union Station. The participants marched east on Market Street to a rally at Luther Ely Smith Square. The police department knew of the event in advance and accommodated it by closing Market Street and several cross streets to traffic. After the rally, marchers returned west on Market Street toward Union Station, still occupying the street. Langford attended the march and rally with another woman, and the two walked west on Market Street after the event.

Police began an attempt to reopen Market Street to traffic. A group of officers instructed the marchers in Langford's vicinity to move to the sidewalk, but the marchers did not at first comply. Bicycle officers approached the marchers, and directed them again to move to the sidewalk.

Langford refused. She moved to the westbound "curb lane" of the street but did not step onto the sidewalk. Instead, she began speaking to a police officer about how the police were perceived by the community.

The officer then placed Langford under arrest for violating the traffic ordinance. There was no vehicular traffic on the street at the time of Langford's

arrest, but the police were in the process of reopening the street. The arresting officer testified that Langford was the only person in the vicinity who failed to comply with orders to vacate the street. Langford's companion complied with the directive to leave the street and was not arrested. Although Langford testified at one point that some other people did not move to the sidewalk, she and her companion both testified that they did not recall seeing any other marchers in the street at the time Langford was arrested.

Langford was detained at the city jail for several hours before she was released. The charge against her was later dismissed.

Langford then sued the City under 42 U.S.C. § 1983. She challenged the ordinance as overbroad in violation of the First Amendment, vague in violation of the Due Process Clause of the Fourteenth Amendment, and unconstitutional as applied to her. She urged the court to enjoin the City from enforcing the ordinance, declare the ordinance unconstitutional on its face and as applied, and award damages and reasonable attorney's fees.

The disputed ordinance provides that "[n]o person, or persons congregating with another or others, shall stand or otherwise position himself or herself in any public place in such a manner as to obstruct, impede, interfere, hinder or delay the reasonable movement of vehicular or pedestrian traffic." St. Louis, Mo., Rev. Code § 17.16.275(A). The law further states that a person who has violated subsection (A), and fails to obey a police officer's order to disperse, commits "the separate offense of failure to obey a dispersing order by a police officer." *Id.* § 17.16.275(E).

The district court granted Langford's motion for partial summary judgment and denied the City's motion for summary judgment. The court declared that the ordinance is overbroad and unconstitutional on its face because it regulates speech, is not narrowly tailored to serve a significant governmental interest, and does not

-3-

leave open ample alternative channels of communication. Alternatively, the court decided that the ordinance is void for vagueness, because it does not provide fair notice of what conduct is prohibited, and is susceptible to arbitrary and selective enforcement. The court also determined that the ordinance was unconstitutional as applied to Langford, because she "could not impede or interfere with traffic when there was no traffic present."

The court permanently enjoined the City from enforcing the prohibition on obstructing traffic in subsection (A) and the requirement to obey a dispersal order in subsection (E). The court delayed the jury trial on Langford's claim for damages pending the disposition of this appeal. We have jurisdiction to review an order granting an injunction, 28 U.S.C. § 1292(a)(1), and we review the district court's ruling *de novo*. *Green v. Byrd*, 972 F.3d 997, 1000 (8th Cir. 2020).

II.

The City argues on appeal that the ordinance is not unconstitutional on its face. First, under the overbreadth doctrine, a law is unconstitutional if it punishes a "substantial" amount of protected speech when "judged in relation to the [law's] plainly legitimate sweep." *Broadrick v. Oklahoma*, 413 U.S. 601, 615 (1973). The concern with chilling protected speech, however, diminishes as the behavior at issue moves from "pure speech" toward "conduct." *Virginia v. Hicks*, 539 U.S. 113, 124 (2003) (internal quotation omitted). "Rarely, if ever, will an overbreadth challenge succeed against a law or regulation that is not specifically addressed to speech or to conduct necessarily associated with speech (such as picketing or demonstrating)." *Id.*

The ordinance here is primarily addressed to conduct, not speech. It forbids a person to "position" herself "in such a manner as to obstruct . . . the reasonable movement of vehicular or pedestrian traffic." St. Louis, Mo., Rev. Code

-4-

§ 17.16.275(A). The law is not "specifically addressed to speech or to conduct necessarily associated with speech." *Hicks*, 539 U.S. at 124.

Langford has not shown, based on the text and application of the ordinance, that substantial overbreadth exists. The text of the ordinance says nothing about speech. The ordinance furthers the City's legitimate interest in "ensuring the free and orderly flow of traffic on streets and sidewalks." *Duhe v. City of Little Rock*, 902 F.3d 858, 865 (8th Cir. 2018). The record does not suggest that the ordinance operates in practice as a substantial bar on protected speech when judged in relation to its plainly legitimate sweep.

In this very case, Langford was the only arrestee among thousands who participated in the Women's March. She was arrested for failing to obey a police officer's order to vacate the street when officers were attempting to reopen the thoroughfare to traffic. Other nearby marchers exercised their rights to freedom of speech, including by shouting at police officers, without suffering an arrest.

Langford contends that *Cox v. Louisiana*, 379 U.S. 536 (1965), supports her facial challenge. In *Cox*, however, the Court reversed a conviction for obstructing public passages based on how the statute was "applied and enforced" in that case, not because the law was unconstitutional on its face. *Id.* at 553, 558. The issue here is overbreadth, and the City's ordinance on obstructing traffic is not an overbroad restriction on speech.

Langford concedes that the ordinance on its face regulates conduct, but maintains that it cannot withstand scrutiny under the rule of *United States v. O'Brien*, 391 U.S. 367, 377 (1968). She argues that the ordinance places an incidental burden on speech that is greater than necessary to satisfy the City's substantial interest in regulating traffic. Ordinary traffic regulations, however, need not exempt those who wish to engage in expressive activity on public thoroughfares. "A group of

-5-

demonstrators could not insist upon the right to cordon off a street . . . and allow no one to pass who did not agree to listen to their exhortations." *Cox*, 379 U.S. at 555. The St. Louis ordinance does not forbid all expressive activities on streets and sidewalks. It merely forbids a person to position herself in a way that obstructs the reasonable flow of traffic. Langford has not established that the ordinance unduly restricts free speech in light of the City's legitimate interest in regulating traffic.

Second, we conclude that the ordinance is not void for vagueness. An ordinance violates the right to be free from a deprivation of liberty without due process if it fails to give fair warning that certain conduct is prohibited. *Stahl v. City of St. Louis*, 687 F.3d 1038, 1040 (8th Cir. 2012). But where an ordinance "is clear and provides fair notice as to what conduct is deemed likely to cause a traffic problem," it is not unconstitutionally vague. *Id.* at 1041.

A city may prevent individuals from obstructing traffic through the enforcement of ordinances "directed with reasonable specificity toward the conduct to be prohibited." *Coates v. City of Cincinnati*, 402 U.S. 611, 614 (1971). The vagueness doctrine is not meant to "convert into a constitutional dilemma the practical difficulties in drawing criminal statutes both general enough to take into account a variety of human conduct and sufficiently specific to provide fair warning that certain kinds of conduct are prohibited." *Colten v. Kentucky*, 407 U.S. 104, 110 (1972). The ordinance here prohibits positioning oneself "in such a manner as to obstruct, impede, interfere, hinder or delay the reasonable movement of vehicular or pedestrian traffic." St. Louis, Mo., Rev. Code § 17.16.275(A). The ordinance uses terms that are "widely used and well understood," *Cameron v. Johnson*, 390 U.S. 611, 616 (1968), and a citizen who desires to obey this ordinance should have little difficulty understanding it. *See Colten*, 407 U.S. at 110; *Powell v. Ryan*, 855 F.3d 899, 903 (8th Cir. 2017).

Langford argues that the ordinance encourages arbitrary enforcement, but recognizing that we cannot "expect mathematical certainty from our language," *Grayned v. City of Rockford*, 408 U.S. 104, 110 (1972), we think the ordinance accords with the due process requirement to provide "minimal guidelines to govern law enforcement." *Smith v. Goguen*, 415 U.S. 566, 574 (1974). That officers must employ some degree of judgment in determining whether a person has positioned herself in a manner that obstructs the reasonable flow of traffic does not render the ordinance unconstitutional. *See Powell*, 855 F.3d at 903-904.

Langford also maintains that the ordinance fails to provide fair notice because it lacks a *mens rea* requirement. Our best evidence of Missouri law, however, is that the state courts will impute a mental state of "purposely or knowingly" when a municipal ordinance fails to prescribe a culpable mental state. *City of St. Louis v. Jones*, 536 S.W.3d 794, 798-99 (Mo. Ct. App. 2018). Langford contends that *Jones* was wrongly decided, but it is the best indication available of Missouri law, and we take into account any limiting construction that a state court is likely to apply. *See Kolender v. Lawson*, 461 U.S. 352, 355 (1983). In light of *Jones*, the City's assurance that it interprets the ordinance to require a culpable mental state is not a mere policy of limited enforcement that is subject to change at the prosecutor's whim. *Cf. United States v. Stevens*, 559 U.S. 460, 480 (2010).

For these reasons, we conclude that the traffic ordinance is not an overbroad regulation of speech or void for vagueness. Therefore, the ordinance is not unconstitutional on its face.

III.

The City next argues that the district court erred in declaring the ordinance unconstitutional as applied to Langford on the particular facts of her case. Langford maintains that she was not obstructing traffic when she was arrested, because there

-7-

was no traffic present, and that she thus lacked fair notice that she was in violation of the ordinance. The district court essentially agreed, concluding that the ordinance was unconstitutionally applied to Langford because her conduct did not violate it.

Langford's position conflates the lawfulness of her arrest with the constitutionality of the ordinance. If the police lacked probable cause to believe that Langford violated the ordinance, then she might establish a violation of the Fourth Amendment's prohibition on unreasonable seizures. But an improper arrest would not demonstrate that the ordinance violates the First Amendment or the Due Process Clause.

Assuming that there was a violation of the ordinance, Langford relies heavily on the Supreme Court's decision in *Cox*. There, the Court held that a state statute on obstructing public passages was unconstitutional as applied to a demonstrator, because local officials could "permit or prohibit parades or street meetings in their completely uncontrolled discretion." 379 U.S. at 557. The Court declared it unconstitutional "to enable a public official to determine which expressions of view will be permitted," or to engage in "invidious discrimination among persons . . . by selective enforcement of an extremely broad prohibitory statute." *Id*. at 557-58.

At the same time, however, *Cox* reiterated that a citizen may not ignore an ordinance regulating public order simply because she wishes to exercise a right to freedom of speech that would be available in another venue. *Id*. at 554. Just as "[o]ne would not be justified in ignoring the familiar red light because this was thought to be a means of social protest," *id.*, a person is not justified in ignoring an ordinance prohibiting the obstruction of traffic simply because she wishes to address a police officer while standing in the street.

Unlike the plaintiff in *Cox*, Langford has not shown that the ordinance was applied against her in a discriminatory manner. The *Cox* statute expressly excepted

-8-

labor picketing from the ban on obstructing public passages, and this content-based distinction led the Court to conclude that the statute reached "beyond mere traffic regulation to restrictions on expression." *Id.* at 556 n.14. The local sheriff in *Cox* admittedly objected to what he deemed the "inflammatory manner" in which the arrestee advocated sit-ins at local lunch counters, and ordered the arrestee's group (gathered on a sidewalk, not on a city street) to disperse. *Id*. at 541, 543 n.6. The law enforcement action in *Cox*—breaking up an ongoing demonstration with tear gas after objecting to the content of the leader's speech, and then arresting the speaker for leading the demonstration—reflected invidious discrimination and a calculated effort to punish the arrestee for his expression.

The St. Louis ordinance, by contrast, is a basic traffic regulation, and Langford was arrested after she declined to obey multiple dispersal orders and remained in the street while officers were attempting to reopen the road to traffic. Other people leaving the march were shouting at the police, but they were not arrested based on their expression of views. Langford does not identify anyone who refused to comply with dispersal orders but was treated differently than she based on speech. The record does not support a conclusion that police invidiously discriminated against Langford based on her speech by selectively enforcing the traffic ordinance.

\*    \*    \*

The judgment of the district court is reversed, and the case is remanded with directions to enter judgment for the City.

_____

# United States Court of Appeals
## *For The Eighth Circuit*

Thomas F. Eagleton U.S. Courthouse
111 South 10th Street, Room 24.329
**St. Louis, Missouri 63102**

**Michael E. Gans**
*Clerk of Court*

VOICE (314) 244-2400
FAX (314) 244-2780
www.ca8.uscourts.gov

July 06, 2021

Mr. Robert Henry Dierker Jr.
CITY COUNSELOR'S OFFICE
314 City Hall
1200 Market Street
Saint Louis, MO  63103-0000

RE:  20-1488  Jessica Langford v. City of St. Louis, Missouri

Dear Counsel:

The court has issued an opinion in this case. Judgment has been entered in accordance with the opinion. The opinion will be released to the public at 10:00 a.m. today. Please hold the opinion in confidence until that time.

Please review Federal Rules of Appellate Procedure and the Eighth Circuit Rules on post-submission procedure to ensure that any contemplated filing is timely and in compliance with the rules. Note particularly that petitions for rehearing and petitions for rehearing en banc <u>must</u> be received in the clerk's office within 14 days of the date of the entry of judgment. Counsel-filed petitions must be filed electronically in CM/ECF. Paper copies are not required. No grace period for mailing is allowed, and the date of the postmark is irrelevant for pro-se-filed petitions. Any petition for rehearing or petition for rehearing en banc which is not received within the 14 day period for filing permitted by FRAP 40 may be denied as untimely.

Michael E. Gans
Clerk of Court

NDG

Enclosure(s)

cc:	Ms. Megan K. B. Bruyns
	Ms. Kayla M. DeLoach
	Mr. Gregory J. Linhares
	Mr. Omri E. Praiss
	Mr. Anthony E. Rothert
	Ms. Jessie M. Steffan
	Ms. Gillian R. Wilcox

District Court/Agency Case Number(s):   4:18-cv-02037-HEA

# United States Court of Appeals
*For The Eighth Circuit*
Thomas F. Eagleton U.S. Courthouse
111 South 10th Street, Room 24.329
**St. Louis, Missouri 63102**

**Michael E. Gans**
*Clerk of Court*

VOICE (314) 244-2400
FAX (314) 244-2780
www.ca8.uscourts.gov

July 06, 2021

West Publishing
Opinions Clerk
610 Opperman Drive
Building D D4-40
Eagan, MN 55123-0000

    RE:  20-1488  Jessica Langford v. City of St. Louis, Missouri

Dear Sirs:

    A published opinion was filed today in the above case.

    Counsel who presented argument on behalf of the appellant and appeared on the brief was Robert Henry Dierker, Jr., of Saint Louis, MO. The following attorney also appeared on the appellant brief;  Megan K. B. Bruyns, of Saint Louis, MO.

    Counsel who presented argument on behalf of the appellee and appeared on the brief was Jessie M. Steffan, of Saint Louis, MO. The following attorneys also appeared on the appellee brief;  Omri E. Praiss, of Saint Louis, MO.,  Anthony E. Rothert, of Saint Louis, MO.,  Gillian R. Wilcox, of Kansas City, MO., Kayla M. DeLoach, of Saint Louis, MO.

    The judge who heard the case in the district court was Honorable Henry Edward Autrey. The judgment of the district court was entered on March 5, 2020.

    If you have any questions concerning this case, please call this office.

    Michael E. Gans
    Clerk of Court

NDG

Enclosure(s)

cc:  MO Lawyers Weekly

    District Court/Agency Case Number(s):   4:18-cv-02037-HEA